NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DENNIS LOMAS ALCANTAR, *Appellant.*

No. 1 CA-CR 24-0311

FILED 03-27-2025

Appeal from the Superior Court in Coconino County
No. S0300CR202201106
The Honorable Stacy Lynn Krueger, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Madeline Shupe
*Counsel for Appellee*

Coconino County Legal Defender's Office, Flagstaff
By Joseph Carver
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Acting Presiding Chief Judge David B. Gass delivered the decision of the court, in which Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

**G A S S**, Chief Judge:

¶1        Alcantar has 2 cases involving the same minor. This appeal arises out of his conviction for a 2018 offense—1 count of sexual abuse of a minor under 15 years of age.

¶2        The State also charged Alcantar for his 2020 acts. Alcantar's 2020 acts occurred later in time. But the State secured a conviction on the 2020 acts before Alcantar was convicted on the 2018 act at issue in this appeal. Indeed, the police learned of the 2018 act only after learning of Alcantar's 2020 acts. The court affirmed Alcantar's convictions for his 2020 offenses in *State v. Alcantar*, 1 CA-CR 23-0189, 2024 WL 2783894 (Ariz. Ct. App. May 30, 2024) (mem. decision). Though this appeal deals only with the 2018 offense, in the trial for this case, the State introduced facts surrounding the 2020 acts as other acts evidence under Arizona Rule of Evidence 404(c). For that reason, this memorandum decision discusses the facts underlying the 2020 convictions as needed.

¶3        We affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶4        The court reviews the facts in the light most favorable to sustaining the jury's verdict, resolving all reasonable inferences against the defendant. *See State v. Felix*, 237 Ariz. 280, 283 ¶ 2 (App. 2015).

#### A.  Alcantar's 2018 act

¶5        After Sarah's[1] parents divorced in 2012, her mother dated and moved in with Alcantar. Sarah lived with her mother and Alcantar every other week. Sarah and Alcantar initially got along well.

---

[1] We use a pseudonym to protect the victim's privacy.

¶6 Things changed in Sarah's first year of high school. Starting in October 2018, when Alcantar would hug Sarah, he would touch her breasts over her clothes.

¶7 In the spring of 2019, Sarah told her mother about Alcantar touching her breasts. Sarah's mother called a meeting with Alcantar and Sarah to discuss the matter. Alcantar denied Sarah's allegations and promised he would never touch Sarah again. For a time, Alcantar made good on his promise. He stopped touching Sarah's breasts, but he started again a few months later. At that point, Sarah did not report it to anyone, including her mother, because she "was afraid if [her] own mother didn't believe [her]" no one else would.

¶8 Several years later, shortly before the trial on the 2020 acts, the police asked Sarah to clarify when the touching began. Sarah said Alcantar began touching her breasts over her shirt in October 2018, around homecoming of her first year of high school. The State then brought a second case against Alcantar, charging him with sexual abuse of a minor under 15 years of age (a class 3 felony) for touching Sarah's breasts "on or between September 1, 2018, and October 31, 2018." Again, that charge and conviction underlie this appeal.

¶9 Sarah's age was an issue at trial. For the jury to convict Alcantar, Sarah had to be under 15 years of age when Alcantar touched her breasts. But her exact birth date is not known. Sarah was born in Mongolia, was left at an educational facility, and then was taken to an orphanage. The orphanage had no information about Sarah's birth, so its doctors estimated May 15, 2004, to be her birthday. In March 2007, Sarah's now mother and father adopted Sarah from the orphanage as a toddler and brought her to Arizona. They have since divorced.

## B. Alcantar's 2020 acts

¶10 This memorandum decision discusses the 2020 acts and convictions for context. In early July 2020, Alcantar touched Sarah's breasts under her shirt and licked her neck. Two weeks later (on July 18, 2020), Sarah told her mother Alcantar was touching her breasts again. When Sarah's mother confronted Alcantar, he denied touching Sarah's breasts. When Sarah's mother tried to call the police, Alcantar took away all 3 phones in the house. Neighbors overheard the argument and called the police.

¶11 That night, the police spoke to Sarah, her mother, and Alcantar. Sarah told police about Alcantar touching her breasts and said it

had been going on for a couple of months. Alcantar denied touching Sarah's breasts, claiming instead to have grabbed her sides and under her armpits to push her away after she leaned toward him.

¶12 Over the next few days, Sarah's mother told Sarah to tell the police it was a "misunderstanding" and she was "accidentally hugging into him a little too much." Six days after the initial police contact, the police conducted a "safe child interview" with Sarah. During the first safe child interview, Sarah said it was all a misunderstanding, and Alcantar might have touched her unintentionally during hugs. She also said she did not remember when Alcantar started touching her breasts.

¶13 A few days later, Sarah saw Alcantar on a walk with her mother. She felt hurt when she learned her mother was still with him. At that point, Sarah told her father about Alcantar touching her. Her father then set up a second safe child interview with police, which took place 6 days after the first. In the second safe child interview, Sarah gave more details, including saying Alcantar touched her bare breasts and licked her neck.

¶14 Based on the July 2020 events, the State charged Alcantar with 2 counts of sexual abuse (both class 5 felonies) and 1 count of preventing the use of a telephone in an emergency (a class 2 misdemeanor). As noted above, Alcantar's convictions and sentences for his 2020 acts are final.

## C. Trial on Alcantar's 2018 act

¶15 At trial in the present case, Sarah and her parents testified. Sarah's mother acknowledged telling Sarah it was all a misunderstanding before the first safe child interview. But she denied telling Sarah what to say in the interview. The State offered testimony from the officers who responded to the house on July 18, 2020, and played portions of their bodycam footage for the jury. The State also presented testimony from an officer who was present for Sarah's subsequent interviews with police. The State also called a cold expert who testified about children who make sexual abuse allegations when adults in their lives do not support or believe them. The expert said those children often are less willing to discuss the abuse and are more likely to disclose the abuse in a piecemeal fashion.

¶16 At the close of evidence, Alcantar moved for acquittal under Rule 20, Arizona Rules of Criminal Procedure, arguing the State failed to present sufficient evidence to prove Sarah was under 15 years of age when the alleged abuse occurred. The superior court denied the motion.

¶17        During the State's closing argument, the prosecutor made several statements highlighting Sarah's mother's shortcomings as a mother to Sarah. Specifically, the prosecutor said:

> There [are] some things we might never fully understand, like why a . . . mother might betray her daughter. Those things, you know, the darkness of the human heart may never be fully understood by us.
>
> We rely on our friends, our family, our parents when we're little, to protect us. But, unfortunately, [Sarah] had a mom who didn't protect her.
>
> It's very clear, I hope, from [Sarah's mother's] testimony, she's on [Alcantar's] side. She's on team [Alcantar]. She wants [Alcantar] to have the charges [against him] dismissed. She is not supporting her daughter.
>
> [Sarah's mother] goes over a year before she asks [Sarah], how are things going between you and [Alcantar]? A year. [Sarah's mother] is not protecting her daughter. She is leaving her daughter alone with a man.

Alcantar objected after the last statement. He argued the State was "encouraging the jury to rely on their sympathies for [Sarah] and . . . that her mother is a bad mom and not to rely on the evidence." The superior court overruled the objection but told the prosecutor not to "linger too long or" it would become prejudicial.

¶18        With that, the prosecutor stopped commenting on Sarah's mother's performance as a mother and ended the argument with the following statement:

> The one time [Alcantar] almost got caught, he gaslit them into thinking it was just natural and normal. What I'm asking you folks to do is apply your common [sense], your understanding, and not to be gaslit and not to be fooled and not to be tangled up in some complication of the law, but to look at what's been shown and what you are firmly convinced of. And if you firmly are convinced that [Alcantar] was touching [Sarah] on her breasts in a sexual manner in October of 2018, that means he is guilty. Of what he is charged with.

¶19       In Alcantar's closing argument, citing Sarah's inconsistent disclosures, defense counsel argued Sarah fabricated the allegations so she could live with her father full-time. Additionally, when discussing Alcantar's interaction with the police on July 18, 2020, defense counsel said:

> [Alcantar] was accused of a crime that he did not commit, and so he didn't handle it the best way that he could have.

And when discussing the burden of proof for the other acts evidence, defense counsel said:

> With the number of inconsistencies here regarding that specific evidence, the State cannot even meet the burden of clear and convincing evidence that [Alcantar] committed these other acts.

¶20       After Alcantar's closing argument, the State argued defense counsel's statements opened the door for the State to introduce evidence of Alcantar's convictions for his 2020 acts. The parties briefed the issue. Regarding the first statement, the superior court found: "Alcantar has been convicted of the crime that was clearly being referenced in that statement. . . . And so that clearly was a false statement." Regarding the second statement, the superior court found: "[T]he wording is problematic. It could have been said that the State had not, in this trial, met its burden. There is a difference with cannot."

¶21       To remedy defense counsel's error, the superior court read both statements to the jury and explained they were "stricken from the record and [are] not to be considered by you for any purpose." The superior court then allowed defense counsel "to correct to clarify your argument." Defense counsel clarified the first statement, saying:

> [Alcantar] was accused of something that *he knew* that he did not do, so he probably didn't handle it [the] best way.

(Emphasis added). Defense counsel then clarified the second statement by saying:

> It's Defense Counsel's position that the State *has not* proven these other acts to you by clear and convincing evidence which is required under the jury instruction that you have received.

(Emphasis added).

¶22 The jury found Alcantar guilty. The superior court sentenced him to 15 years in prison to run concurrently with his sentence for the 2020 offenses.

¶23 The court has jurisdiction over Alcantar's timely appeal under Article VI, Section 9, of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033.A.1.

## DISCUSSION

¶24 When a defendant objects at trial, the court conducts a harmless error review in which the State bears the burden "to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Strong*, ___ Ariz. ___, ___ ¶ 45, 555 P.3d 537, 553 (2024) (quoting *State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005)). "Conversely, for issues not properly objected to at trial, we review for fundamental error only." *Id.* (citing *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018)).

¶25 For fundamental error, "a defendant must establish both that fundamental error occurred and that it caused him prejudice (though showing the former may establish the latter)." *Id.* (quoting *State v. Johnson*, 247 Ariz. 166, 185 ¶ 41 (2019)). Fundamental error must go "to the foundation of the case, take[] away from the defendant a right essential to [the defendant's] defense, or [be] of such magnitude that the defendant could not have possibly received a fair trial." *Id.* (quoting *Johnson*, 247 Ariz. at 185 ¶ 41). In assessing the alleged prejudice, the court reviews "whether, without the error, a reasonable jury could have reached a different result, even if substantial evidence of guilt exists." *Id.* (quoting *Escalante*, 245 Ariz. at 144 ¶ 34).

## I. The State introduced substantial evidence to establish Sarah was under 15 when the sexual abuse occurred.

¶26 Alcantar argues the superior court should have granted his Rule 20 motion for acquittal because the State did not produce sufficient evidence to prove Sarah was under 15 years old at the time of the alleged offense.

¶27 When ruling on a Rule 20 motion based on a lack of substantial evidence, the superior court must consider "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562 ¶ 16 (2011) (cleaned up); Ariz. R. Crim. P. 20(a). The sufficiency of the evidence is a

question of law this court reviews *de novo*. *West*, 226 Ariz. at 562 ¶ 15. Because Alcantar raised the issue at trial, we review for harmless error. *See Strong*, ___ Ariz. at ___ ¶ 45, 555 P.3d at 553.

**¶28** To convict Alcantar, the jury had to find Sarah was "under fifteen years of age" when Alcantar touched her breasts. A.R.S. § 13-1404.A. Because the alleged touching occurred in October 2018, the jury had to find Sarah was born after October 2003.

**¶29** The State can establish a victim's age with an estimate based on circumstantial evidence. *See State v. Nereim*, 234 Ariz. 105, 109 ¶¶ 12–13 (App. 2014); *State v. Olquin*, 216 Ariz. 250, 256 ¶ 28 (App. 2007). In *Nereim*, 2 police officers testified, estimating the victim's age to be 10 or 11. 234 Ariz. at 109 ¶¶ 12–13. Their testimony "constituted substantial evidence for purposes of Rule 20 and was sufficient to support a jury's conclusion that the child was under fifteen." *Id.* Similarly, in *Olquin*, officers' testimony saying the children in a truck "were all under the age of ten . . . was more than sufficient to permit a jury to find . . . a person under the age of fifteen was in the vehicle." 216 Ariz. at 256 ¶ 28.

**¶30** True, Sarah's exact birthdate is unknown. But the State showed she arrived at an orphanage in China as an infant. There, doctors estimated she was born in May 2004, more than 6 months after October 2003.

**¶31** Alcantar tries to distinguish *Nereim* and *Olquin* because the victims there were much younger than 15. He argues the evidence was insufficient because Sarah's estimated age of 14 years and 5 months was much closer to 15. The jury thus could not reasonably determine Sarah was under fifteen based on an estimate. But the jury did not need to determine Sarah's age based on her appearance at trial or in the bodycam footage. Here, the jury did not even hear evidence of officers' estimates of Sarah's age. Rather, the jury heard evidence of, and could rely on, the orphanage doctors' estimate of Sarah's age as an infant. At that time, a 7-month age difference would be more apparent. The estimate of her age as an infant constituted "substantial evidence" on which a reasonable jury could find Sarah was under 15 years of age when the abuse started in October 2018. The superior court thus did not err when it denied Alcantar's motion for acquittal.

II.     **The State's closing arguments did not improperly appeal to jurors'
        emotions, passions, or prejudices.**

¶32             Alcantar argues the State committed reversible error by
repeatedly commenting on Sarah's mother's shortcomings as a mother to
Sarah during closing argument. He also argues the State committed
fundamental error when it argued the jury should not be gaslit into
believing Alcantar's conduct was normal.

        A.      **The State properly used Sarah's mother's behavior to
                explain why Sarah's statements to the police were
                inconsistent with her trial testimony.**

¶33             Prosecutors have wide latitude in presenting closing
arguments. *State v. Acuna Valenzuela*, 245 Ariz. 197, 222 ¶ 109 (2018). That
latitude "includes arguing all reasonable inferences from the evidence." *Id.*
An argument is improper when it "appeal[s] to the jurors' emotions,
passions, or prejudices by urging them to convict defendant for reasons
wholly irrelevant to his own guilt or innocence." *State v. Herrera*, 174 Ariz.
387, 397 (1993) (quotation omitted). When the State's argument goes beyond
the limits of permissible argument, the issue is whether the argument (1)
was "so unduly prejudicial as to have amounted to a denial of a fair trial"
and (2) was "likely to have influenced the jury in reaching a verdict." *Acuna
Valenzuela*, 245 Ariz. at 222 ¶ 109 (quoting *State v. King*, 110 Ariz. 36, 42–43
(1973)). Because Alcantar's counsel objected at trial, the court reviews for
harmless error. *See Strong*, ___ Ariz. at ___ ¶ 45, 555 P.3d at 553.

¶34             Alcantar says Sarah's mother's testimony was relevant only
to whether she coerced Sarah to tell police it was all a misunderstanding in
the first safe child interview. And because the repeated attacks on Sarah's
mother's parenting were unrelated to whether she coerced Sarah to make
statements to the police, the attacks only served to elicit sympathy for Sarah.
Accordingly, Alcantar argues these attacks improperly appealed to the
jurors' emotions.

¶35             Alcantar fails to see the relevance of the prosecutor's attacks
on Sarah's mother's parenting. The attacks were relevant to bolster Sarah's
credibility by explaining the inconsistencies in her statements to the police.
Sarah's credibility was the key issue at trial. *See State v. Gillies*, 135 Ariz. 500,
507 (1983) (noting the victim's credibility "was of considerable importance"
when there were no witnesses to the alleged crime). The State had no
eyewitnesses or physical signs of abuse. Sarah's testimony thus was the
primary evidence substantiating the abuse. Her first statements to the

police put her credibility in question. They were inconsistent. Some conflicted with her testimony at trial. Specifically, in the first safe child interview, Sarah said it was all a misunderstanding and the touching might have been unintentional. But in the second safe child interview and at trial, she said Alcantar reached under her shirt, touched her breast, and licked her neck.

¶36  Defense counsel put Sarah's credibility directly at issue when she argued, after the first safe child interview, Sarah conspired with her father to make up the story she told in the second safe child interview so she could live with him full time. Explaining Sarah's state of mind when she made the inconsistent disclosures was relevant to refute Alcantar's suggestion Sarah lied and intentionally changed her story.

¶37  The evidence supported a reasonable inference about Sarah's mother's support. First, it showed Sarah's mother did not support her after learning of the abuse. Second, it showed that lack of support caused Sarah to alter her story in the first safe child interview. Specifically, Sarah's mother testified she only "half believed" Sarah when Sarah first reported the abuse in the spring of 2019. And her mother told Sarah it was a misunderstanding when Sarah reported the abuse again in July 2020. Sarah testified she did not report the abuse to others because her "own mother didn't believe [her.]" The expert witness explained when adults do not believe or support children who make sexual abuse allegations, the children are less willing to discuss the abuse and often disclose the abuse in stages. The superior court did not err when it allowed the State limited leeway to criticize Sarah's mother's actions as a mother to Sarah. *See Acuna Valenzuela*, 245 Ariz. at 222 ¶ 109 (noting prosecutors may argue "all reasonable inferences from the evidence").

   **B.** **The State did not commit fundamental error when it argued the jury should not be gaslit about the normalcy of Alcantar's conduct.**

¶38  Alcantar next contends the State directly asked the jury to decide the case on passion, emotion, or prejudice by telling jurors to "apply your common [sense], your understanding, and not to be gaslit and not to be fooled and not to be tangled up in some complication of the law." Alcantar argues this statement serves no other purpose and was "misconduct in and of itself." Because Alcantar's counsel did not object at trial, the court reviews for fundamental error. *See Strong*, ___ Ariz. at ___ ¶ 45, 555 P.3d at 553.

¶39 The context around the comment is essential. Immediately before making the comment, the prosecutor said: "The one time [Alcantar] almost got caught, he gaslit them into thinking it was just natural and normal." And immediately after the comment, the prosecutor said: "look at what's been shown and what you are firmly convinced of. And if you firmly are convinced that [Alcantar] was touching [Sarah] on her breasts in a sexual manner in October of 2018, that means he is guilty." Accordingly, when viewed in context, the prosecutor was telling jurors not to be gaslit or confused into believing Alcantar's contact with Sarah's breasts was not sexual. The statement was not improper.

¶40 Even assuming the comment was improper, it did not constitute fundamental error. Alcantar does not argue the comment went to the foundation of the case, took away a right essential to his defense, or was so egregious he could not have possibly received a fair trial, as is required to establish fundamental error. *See Escalante*, 245 Ariz. at 142 ¶ 21. And he cannot show prejudice. *See id.* Defense counsel mitigated any potential prejudice by addressing the comment in closing argument: "the State said something like, don't get tangled in the law. Remember that you are here to apply the law to the facts of the case. We must get tangled in the law. It is required." Also, the jurors were instructed "not [to] be influenced by sympathy or prejudice" and "[what] the lawyers said is not evidence." Jurors are presumed to follow instructions. *State v. Ovante*, 231 Ariz. 180, 186 ¶ 24 (2013). Alcantar establishes no error, let alone fundamental error.

¶41 Alcantar describes the prosecutor's statements as "misconduct." But Alcantar cites no authority on prosecutorial misconduct and identifies no ethical violation. Prosecutorial misconduct goes beyond error. It implies "a concurrent ethical rules violation." *State v. Shortman*, 254 Ariz. 338, 343 ¶ 20 (App. 2022) (cleaned up). Because Alcantar has not claimed the prosecutor acted unethically, he has not argued prosecutorial misconduct. And there was no error.

III. **The superior court acted within its discretion when it struck 2 statements from defense counsel's closing arguments and gave the jury curative instructions.**

¶42 Alcantar argues the superior court committed reversible error when it struck 2 statements from defense counsel's closing arguments and issued a curative jury instruction.

¶43 The court reviews a trial court's ruling on statements made during closing arguments for abuse of discretion. *State v. Jones*, 188 Ariz.

534, 540 (App. 1996). Counsel has wide latitude in closing arguments and may comment on the evidence and argue reasonable inferences. *State v. Zaragoza*, 135 Ariz. 63, 68 (1983). But arguments must be based on facts the jury is entitled to find from the evidence and not on extraneous matters that were not or could not be received in evidence. *State v. Jordan*, 80 Ariz. 193, 196 (1956); *State v. Neil*, 102 Ariz. 299, 300 (1967). A trial court has broad discretion to regulate closing arguments and prevent misleading statements. *State v. Tims*, 143 Ariz. 196, 199 (1985); *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . limiting the scope of closing summations."). Because Alcantar raised the issue at trial, the court reviews for harmless error. *See Strong*, ___ Ariz. at ___ ¶ 45, 555 P.3d at 553.

**¶44** Defense counsel made the first statement, "he was accused of a crime that he did not commit," in reference to Alcantar's demeanor when Alcantar was first arrested for the other acts. Defense counsel made the second statement, "the State cannot even meet the burden of clear and convincing evidence," in reference to the other acts.

**¶45** On this record, the superior court did not abuse its discretion when it found the statements improper. The superior court reasonably concluded the statements invited speculation on whether the State could secure a conviction against Alcantar for the other acts. That speculation was arguably improper for 2 reasons. First, it required the jury to consider matters not in the record. Though the State presented evidence of the other acts at trial, it did not present evidence of the convictions. Second, Alcantar already stood convicted of the other acts. *See Alcantar*, 1 CA-CR 23-0189. In other words, defense counsel could not argue Alcantar "did not" commit the crimes and the State "cannot" meet a lower burden of proof because it already had met a higher burden with regard to the 2020 crimes. And, as above, the 2020 convictions were not in evidence. The superior court thus reasonably concluded defense counsel's statements were inaccurate.

**¶46** Critical to the court's analysis is the importance of deferring to the superior court's discretionary decisions based on how statements are said. *See State v. Hulsey*, 243 Ariz. 367, 389 ¶ 95 (2018). "[T]he trial court is in the best position to gauge whether a counsel's tone crosses the line into misconduct." *Id.* at 393 ¶ 117. Here, the superior court said "this particular case create[d]" a greater concern for "how" defense counsel made the statements. The superior court was in the best position to determine whether these statements were improper, how the jurors may have received the statements, and to fashion an appropriate remedy. *See id.*; *State v. Newell*, 212 Ariz. 389, 402 ¶ 61 (2006).

**¶47**        Alcantar also argues the superior court violated his right to be presumed innocent when it struck defense counsel's statement, "he was accused of a crime that he did not commit." But the superior court's ruling did not require Alcantar to admit guilt. Rather, the superior court merely prevented the jury from being misled. The right to maintain innocence does not include the right to present factually inaccurate arguments to a jury.

**¶48**        Last, Alcantar argues the superior court improperly commented on the evidence when it struck both statements. A court improperly comments on evidence when the court "express[es] an opinion as to what the evidence proves in a way that interferes with the jury's independent evaluation of that evidence." *State v. Riley*, 248 Ariz. 154, 179 ¶ 85 (2020) (quoting *State v. Rodriguez*, 192 Ariz. 58, 63 ¶ 29 (1998)) (cleaned up). The superior court's curative instruction merely struck the statements and allowed defense counsel to clarify them. The superior court expressed no opinion to the jury.

**¶49**        Therefore, the superior court did not err when it struck defense counsel's statements and issued a curative jury instruction.

## CONCLUSION

**¶50**        We affirm Alcantar's conviction and sentence.

